IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA

VS.                                          4:95-CR-00257-01-BRW

MIGUEL ANGEL CUEVAS

### ORDER

Pending are Defendant's Motion for Compassionate Release and Motion to Appoint Counsel. The Prosecution has responded.[1] Based on the findings of fact and conclusions of law below, the Motion for Compassionate Release (Doc. No. 684) is GRANTED and the Motion to Appoint Counsel (Doc. No. 685) and Motion for Update (Doc. No. 687) are MOOT. Accordingly, Defendant's sentence is reduced to TIME SERVED, effective three weeks from the date of this Order. The reasons for the delay are explained at the end of the Order.

### I.   BACKGROUND

On August 21, 1996, a jury found Defendant guilty of conspiracy to distribute methamphetamine and money laundering.[2] For several years, Defendant was the leader of a large-scale cross-country methamphetamine trafficking conspiracy. Ultimately, he was held responsible for 56.0196 kilograms of methamphetamine and was found to have laundered $1,400,000 in proceeds from the operation. Defendant received sentencing enhancements because: he was the leader of a group of more than five people (+4); on at least one trip to Arkansas, he possessed a firearm (+2); and he helped two co-conspirators relocate to Mexico

---

[1] Doc. No. 686.

[2] Doc. Nos. 383, 384.

1

avoid law enforcement here (+2).  With a total offense level of 46 and a criminal history score of III, his guideline range was life. On November 18, 1996, he was sentenced to life in prison.[3]

Since he was sentenced, Defendant's repeated attempts to have his sentence reduced have failed because there was no support for a reduction under the law.  Now, Defendant seeks a sentence reduction based on compassionate release.

## II.     DISCUSSION

### A.     The First Step Act

Defendant's Motion for Compassionate release is based on the First Step Act (FSA).  The Second Circuit Court of Appeals described the FSA as:

> simultaneously monumental and incremental. Monumental in that its changes to sentencing calculations, mandatory minimums ... and other parts of our criminal laws led to the release of thousands of imprisoned people whom Congress and the Executive believed did not need to be incarcerated. Incremental, in that, rather than mandating more lenient outcomes, it often favored giving discretion to an appropriate decisionmaker to consider leniency.[4]

To be eligible for compassionate release, there are a few steps a defendant must take. First, he must request relief from the warden. If the warden does not respond within 30 days, he can file a motion with the court.[5]  Second, Defendant must establish "extraordinary and compelling" reasons for relief.  If he does that, then I must consider the 18 U.S.C. § 3553(a) factors to determine if a sentence reduction is appropriate for the particular individual.[6]

---

[3]Doc. Nos. 442, 462.

[4]*United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020).

[5]See *United States v. Smith*, 460 F. Supp. 3d 783 (E.D. Ark. 2020) (no jurisdiction when defendant fails to exhaust administrative remedies).

[6]18 U.S.C. § 3553(a)(2) mandates that any sentence imposed reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide the defendant with appropriate rehabilitation.

Defendant asserts that he has requested relief from the warden, but thirty days have passed with no response. Accordingly, he has exhausted his administrative remedies and the issue is properly before me.

### B.     Defendant's Reasons for Compassionate Release

Defendant asserts that he should be granted compassionate release because: (1) he received a draconian sentence when sentenced to life for a non-violent drug offense; (2) changes in the law would have resulted in a different sentence today; (3) he was penalized for exercising his right to a jury trial; (4) his life sentence creates a sentencing disparity with his co-defendants; and (5) his health conditions make him more likely to suffer if he were to contract COVID-19.

### C.     Extraordinary and Compelling

As mentioned above, § 3582(c)(1)(A)(i) allows me to modify Defendant's sentence if "extraordinary and compelling reasons warrant such reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," which are set out in United States Sentencing Guideline § 1B1.13. That section lists several specific factors to consider, but they are not applicable in this case. However, there is an "Other Reasons" section that allows for a sentence reduction when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."[7] Additionally, appellate courts recently have recognized that the section is outdated and that district courts have broad discretion in determining whether the circumstances are "extraordinary and compelling."[8]

---

[7] U.S.S.G. § 1.13 cmt. n.1(D).

[8] *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (citing *United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020)) ("The court concluded that the amended § 3582(c)(1)(A) does authorize courts to make their own independent assessments of 'extraordinary and compelling reasons' – not because § 1B1.13 is inconsistent with the First Step

3

Here, the first four points raised by Defendant are extraordinary and compelling reasons to warrant compassionate release. Although the last point[9] is less persuasive, all five arguments, considered together, justify relief.

### 1.     Life Sentence

Defendant's total offense level is high because of the large quantity of drugs and the various enhancements. As a result, none of the retroactive drug laws have provided him any relief. In fact, if he were sentenced today, he would still have a guideline range of life, because his total offense level would be 44. However, bsed on the totality of the circumstance, a life sentence is greater than necessary.

Importantly, "[i]n a Senate Report that accompanied the Sentencing Reform Act . . . Congress indicated that sentence modifications would be appropriate in 'cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of *an unusually long sentence*, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.'"[10] That is the situation here – an unusually long sentence for a drug conspiracy

---

Act, but because § 1B1.13 is not an 'applicable' policy statement at all."); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an "extraordinary and compelling" reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

[9]*United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (holding that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

[10]*United States v. McDonel*, No. 07-20189, 2021 WL 120935, at *3 (E.D. Mich. Jan. 13, 2021) (citing S. Rep. No. 98-225, at 55-56 (1984)).

conviction. Other courts have granted compassionate release in cases involving life sentences, and even shorter sentences.[11]

### 2. Changes in the Law

There has also been a significant change in the law since Defendant was sentenced: the guidelines are no longer mandatory.[12] Had they been advisory when Defendant was sentenced, I would not have been required to sentence him to life. Other district courts also have considered this a compelling factor when analyzing a motion for compassionate release.[13] In fact, the Court of Appeals for the Fourth Circuit affirmed a district courts finding that changes in the law that would greatly reduce a defendant's sentence could be consider "extraordinary and compelling."[14] In this case, a life sentence is greater than necessary to be considered a just sentence.

---

[11]*United States v. Millan*, No. 91-CR-685, 2020 WL 1674058, at *8 ("He was a leader of a large-scale narcotics distribution organization, a most serious crime. Nevertheless, almost thirty years is a long time behind bars by any measure for anyone."); *United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019) (finding that a convicted drug dealer's nearly 17 years in prison was "a significant sanction."); *United States v. Carroll*, No. 98-CR-351(RLW), 2020 WL 8024485, at *7 (E.D. Mo. Sept. 14, 2020) (granting compassionate release when mandatory life sentence was based on a robbery that the defendant committed at 16 years old); *United States v. Rodriguez*, No. 00-CR-761-2(JSR), 2020 WL 5810161, at *8 (S.D.N.Y. Sept. 3, 2020) (granting compassionate release despite defendant's mandatory life sentence because defendant had been "totally rehabilitated" and had underlying health conditions that "increase[d] the risks associated with COVID-19"); *United States v. Perez*, No. 3:02-CR-7(JBA), 2021 WL 837425, at *5 (D. Conn. Mar. 4, 2021) ("Although [the defendant's] life sentences are mandatory, the mandatory component does not bar relief under the First Step Act.").

[12]*United States v. Booker*, 543 U.S. 220 (2005) (holding that the sentencing guidelines are advisory, not mandatory).

[13]*United States v. Jones*, 482 F. Supp. 3d 969, 980 (N.D. Cal. 2020); *United States v. Parker,* 461 F. Supp. 3d 966, 980–81 (C.D. Cal. May 21, 2020); see also *United States v. Redd*, 444 F. Supp. 3d 717, 722-23 (E.D. Va. 2020).

[14]*United States v. McCoy*, 981 F.3d 271, 279 (4th Cir. 2020).

### 3. Jury Trial

Defendant is also correct that exercising his Constitutional right to a jury trial cost him dearly, regarding the amount of time he has had to serve. This is an extraordinary result, since Defendant argues that he was offered 12 to 15 years if he pled, but did not cooperate. He also contends that if he pled guilty and cooperated, he would be looking at a sentence in the 6 to 8 year range.[15] Instead, he went to trial, and, as he puts it, "paid the ultimate price . . . for exercising his Constitutional right."[16]

### 4. Sentence Disparities

Defendant argues that his life sentence creates an unfair sentencing disparity with his co-conspirators. Defendant's life sentence far exceeds all the co-conspirators. For example, the other sentences for co-conspirators who pled guilty range from 10 months to 120 months. The average sentence was just under 50 months. Although Defendant was the leader of the conspiracy and is the only person who chose to go to trial, this result is unacceptable.

### D. 18 U.S.C. § 3553(a) factors

Since Defendant has established that extraordinary and compelling reasons exist for compassionate release, I must consider the § 3553 factors. Under that statute I am to "impose a sentence sufficient, but not greater than necessary," and must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed–
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and

---

[15] The Prosecution did not address the accuracy of these numbers in its response.

[16] Doc. No. 684.

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[17]

### 1. Personal Characteristics

Defendant has three prior convictions, which include possession of PCP for sale, stealing a car, and obstruction of mail. He got the first conviction in 1982, when he was 19 years old. The other two convictions were in February and March of 1989, when he was 25 years old. The Prosecution mentions that Defendant had a pending charge for murder in 1995, but that case was *nolle prossed* in 1996, according to court records. Additionally, prison records reflect that Defendant has not had a disciplinary infraction in over 20 years.

Despite being sentenced to life in prison, Defendant has taken numerous self-improvement courses[18] and obtained his GED. Although "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," it may be considered along with the other factors.[19]

The Prosecution points out that, throughout the years, Defendant has claimed he was innocent. However, his current motion clearly sets out that he "is no longer the immature and

---

[17] 18 U.S.C. § 3553(a).

[18] Solder Exploratory, General Soldering Instruction, Soldering Certification, Community Info Seminar, HIV/AIDS Awareness, Criminal Thinking-Psychology, Touch Pad Typing, Release Requirements, Science, Creative Writing, ESL, Famous Male Sports Stars, Legal Research, Business Math, Intro to Band, Beginning Guitar, CDL, Career Development, Personal Development, and Spanish I.

[19] 28 U.S.C. § 944(t). See *United States v. Millan*, 2020 WL 1674058, at *7 ("[L]egislators' use of the modifier 'alone' evidences that they believed that rehabilitation is relevant to the question of whether a sentence should be reduced.").

irresponsible man <u>who committed his crimes</u> in the early 90s . . . ."[20] He also says that he is "contrite and has accepted responsibility for his crimes."[21]

Defendant was in his late 20s and early 30s when he was involved in this conspiracy. Now, he is 58 years old and has spent nearly half of his life in prison. Recidivism is unlikely.

### 2. Seriousness of the Offense

The severity of the offense also must be considered. Defendant was the leader of a large methamphetamine trafficking ring and was known to carry firearms during transactions. He also helped two people escape to Mexico so they could avoid prosecution. While the offense is severe, Defendant has been in custody since January 1996 – over 25 years.

Additionally, according to statistics from United States Sentencing Commission, in 2019, the average sentence imposed for robbery was 109 months; for murder, 255 months; for child pornography, 103 months; and for extortion/racketeering, 32 months.[22] This means that Defendant, who is guilty of a drug conspiracy, has served more time that the average for murder.

### 3. Adequate Deterrence

I question whether any sentence really deters someone from becoming a large-scale drug dealer or, for that matter, committing most crimes. I believe there is also scholarship on this point. Still, if 25 years in prison does not deter someone from being the leader in a drug conspiracy, nothing will.

---

[20]Doc. No. 684 (emphasis added).

[21]*Id.*

[22]See Table 15, "Sentence Imposed by Type of Crime," https://www.ussc.gov/2019-Annual-Report-and-Sourcebook ("2019 Sourcebook").

  **4.**  **Protect the Public**

Defendant's disciplinary record while incarcerated shows that he is no longer a threat to the public. Furthermore, Defendant will be on supervised release for 10 years, so he will be under supervision until he is nearly 70 years old. This also will protect the public.

  **5.**  **Educational and Vocational Training**

As mentioned above, Defendant obtained his GED and took numerous classes to better himself. He has had plenty of time for educational and vocational training, and has taken advantage of those opportunities.

## CONCLUSION

For the reasons stated, Defendant's Motion for Compassionate Release (Doc. No. 684) is GRANTED. Defendant's sentence is reduced to TIME SERVED, effective three weeks from the date of this Order. The three weeks will allow Defendant time to quarantine to avoid COVID-19 exposure and get a medical clearance before entering a halfway house. Additionally, it will give Defendant time to develop a release plan.

Upon release from imprisonment, Defendant will be on supervised release for ten years. He must report to the probation office in the district to which he is released within 72 hours of release from the custody of the Bureau of Prisons and comply with all mandatory and standard conditions that apply.

While on supervised release, Defendant must spend the first 12 months in a half-way house. If Defendant is placed in a half-way house while under the jurisdiction of the Bureau of Prisons, that time may be credited toward his 12 months while on supervision. This will allow sufficient time Defendant to reestablish himself in society after his lengthy incarceration.

Defendant must cooperate in the collection of DNA as directed by the probation officer.

All other conditions in the November 18, 1996 judgment remain in effect.[23]

The Motion to Appoint Counsel (Doc. No. 685) and Motion for Update (Doc. No. 687) are MOOT.

IT IS SO ORDERED, this 6th day of April, 2021.

Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[23]Doc. No. 462.